Schultz & Son, Inc., Respondent, *v.* Nels H. Nelson, Defendant, and Selma Stille, Appellant.

(Argued May 21, 1931; decided June 2, 1931.)

*Francis G. Hoyt* for appellant. There was no written agreement or memorandum signed by appellant as required by the Statute of Frauds. (*Zilmaur Realty Corp.* v. *Pinkney*, 208 App. Div. 467; *Mentz* v. *Newwitter*, 122 N. Y. 491; *De Goode* v. *Benton*, 141 App. Div. 22; *Spielvogel* v. *Veit*, 197 App. Div. 804.) The verdict was excessive. (*Hopkinson* v. *Lee*, 6 Wheat. 109; *Northridge* v. *Moore*, 118 N. Y. 419; *Bulkley* v. *Rouken Glen, Inc.*, 222 App. Div. 570.)

*Benjamin I. Tunick* for respondent. The defendant acted as an agent merely for the purpose of executing a deed, and it is unnecessary to show a contract to sell on her part. (*Stafford* v. *Burke*, 130 Misc. Rep. 12.)

CRANE, J. Nels H. Nelson of the village of Croton Falls, county of Westchester, was the owner of a piece of property at Green Knolls, Scarsdale, Westchester county, N. Y. He was about to give up the building business on account of his physical condition and go to Sweden.

Oscar Le Roy Warren, of White Plains, was his lawyer, and to him he went in reference to the sale of this lot. Not wanting to delay leaving the country until the property was sold, he made a deed to his aunt, Selma Stille, of 65 Bleecker street, Brooklyn, N. Y., to be held by his lawyer until a purchaser had been procured. Warren, the attorney, was to negotiate the sale, execute the contract, and have a deed executed by the aunt, Selma Stille, who would be in this country, and through whom title could pass without the inconvenience of sending papers to Nelson in Sweden. The deed from Nelson to his aunt was made and dated August 2, 1927, and remained in the possession of the attorney until June of 1928. Warren was Nelson's agent, so that delivery of the deed to him was not delivery to Selma Stille. (*Van Valkenburg* v. *Allen*, 111 Minn. 333; *Shelinsky* v. *Foster*, 87 Conn. 90.)

On March 9, 1928, Warren, as attorney in fact for Nelson, made a contract to sell the property to Schultz

& Son, Inc., for $2,500, title to close at the office of the Cooley Realty Company in Scarsdale, on May 8, 1928. This contract with all its terms and conditions was made binding upon the heirs, executors, administrators, successors and assigns of the respective parties. At the time of closing, the attorney, Warren, and his partner, Scott, still had the deed of Nelson to his aunt in their possession. It had never been delivered to her, although she knew about it from letters and through conversations. The title company refused to close title until her deed was recorded, and a few days' adjournment were taken for this purpose, Mrs. Stille being present at the time and saying, "All right, when the deed was recorded and title searched she was going to give us the deed." The deed was thereupon recorded and for the first time delivery by this means was made to Mrs. Stille. (*Whiting* v. *Hoglund*, 127 Wis. 135; *Boody* v. *Davis*, 20 N. H. 140; *Holmes* v. *McDonald*, 119 Mich. 563.) She knew then, if not before, of the contract of sale, and took the property subject to its terms and conditions. As it was binding upon Nelson's successors and assigns she was obliged to perform.

This she failed to do, but conveyed the property subsequently at a higher price to innocent third parties, thus depriving Schultz & Son, Inc., of the benefits of its bargain. The plaintiff has brought this action against Mrs. Stille to recover its damage, and has recovered a judgment, which must be affirmed, except as modified in the particulars hereinafter stated.

Selma Stille knew as early as January 20, 1928, or two months before the making of the contract with the plaintiff, the purpose for which Nelson had made out a deed to her. In a letter under that date Warren informs her that he has a tentative offer of $2,500 for the property and states: "As you probably know, Herbert conveyed this lot to you before he left this country. I do not know just what he wanted for the lot but perhaps you

do." Again, on March 13, 1928, the lawyer wrote Mrs. Stille: "A few days ago I received a letter from Herbert saying that he would accept $2,500 half cash and the balance on a mortgage." And then follows the information that he has sold the property, title to close on May eighth. To this letter Mrs. Stille replied March 14, 1928:

" Mr. O. WARREN,
          " White Plains, N. Y.
     " DEAR SIR.— I am very much pleased with the sale of Herbert's lot, and also in favor of depositing the money in White Plains on Herbert's account.
                         " Yours very truly,
                              " SELMA STILLE."

If there be any doubt from this correspondence that Mrs. Stille knew why Nelson had made a deed to her and left it with his lawyer it is dispelled by the testimony of Attorney Warren that when she called in the following July with her lawyer he told them all the facts, and later sent her the deed, returned from the Register's office. She did not convey away the property to an innocent third party until the following January, 1929.

In the absence of Mrs. Stille to testify or give any explanation of these facts, if she has any, the trial justice properly directed judgment for the plaintiff for the damages sustained through the grantee of the property taking it with knowledge of the contract and refusing to carry it out. Although section 294 of the Real Property Law (Cons. Laws, ch. 50) permits the recording of executory contracts of sale yet the record is not constructive notice to subsequent purchasers. To one who discovers such record, however, it is notice — actual notice. (Reeves on Real Property, vol. II, § 745.) Mrs. Stille had actual notice.

The judgment, however, must be modified in the following particulars. The plaintiff cannot have the profits and also recover for counsel fee and title search. It has

received by this judgment the same benefits it would have had if the contract had been carried out and the property deeded to it. Under such conditions the plaintiff would have paid the counsel fee and the cost of a title search. Having received all the benefits in the form of the $500 profit, it likewise must stand this expense.

The judgment of the Appellate Division and that of the trial court should, therefore, be modified by deducting from the judgment of the trial court the sum of $175, with interest, and as thus modified affirmed, without costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment accordingly.