FRANK S. ANDREW *vs.* FREDERICK W. BABCOCK.

New Haven & Fairfield Cos., April T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

The vendor of land stands on the same ground with the vendee in respect to the right to a specific performance of a contract for the sale of the land, with the qualification that courts have sometimes refused to decree a specific performance in his favor where it would be productive of special hardship.

It is not enough that the vendor has a remedy at law in a suit for damages.

The plaintiff and defendant agreed by parol, the former to sell and the latter to buy certain real estate. The plaintiff wrote out a memorandum of the sale and submitted it to the defendant, and it was agreed

that the plaintiff should have duplicate copies prepared, which he should sign and forward to the defendant for his signature, who agreed to return one to the plaintiff signed by him.  Two days later the plaintiff sent the duplicates, both signed by him, saying in his letter—"If found correct please sign and mail me one of them."  The defendant replied, acknowledging the receipt of the papers, and saying—"I will be in your city to-morrow and call on you with the agreement."  Neither of the duplicates was in fact signed by the defendant, who afterwards refused to carry out the agreement.  Held that there was not a sufficient signature of the defendant to the agreement to take it out of the statute of frauds.

The only description of the property in the memorandum was—"A tract of land with all the buildings thereon, adjoining the N. H. & D. railroad in the town of O, containing some twenty acres."  Held that the description was too indefinite.

Whether the description could have been applied to the land by extrinsic evidence: *Quære.*

The plaintiff delivered the keys of the buildings to the defendant at the time of the oral agreement, and he took them.  The plaintiff also immediately detached and removed from the buildings a boiler, shafting, vats, and other articles, at a large expense, and proceeded to get all incumbrances on the property removed, the agreement requiring this, and finally effected their entire removal, though not till after the defendant had refused to carry out the contract.  Held that this was a part performance on the part of the plaintiff that delivered the case from the application of the statute of frauds.

The acts which will constitute a sufficient part performance in such a case must have been done by the party seeking to enforce the contract, in pursuance of it, and with the design of carrying it into execution; and must be done with the assent of the other party or with such knowledge as would imply assent, and be such as altered the relations of the parties.

The possession of the land, delivered and taken, must be a possession explainable only by the contract, indicating a new estate or interest acquired, and not the mere continuance of a former possession.

Where by a contract for the sale of land the vendor is to convey a clear title, and time is not of the essence of the contract, and is not made material by the offer of the other party to fulfill and his demand of a conveyance, the vendor will be allowed a reasonable time to perfect his title, however defective it may have been at the time of the agreement.

By the agreement in the present case the defendant was to pay the plaintiff rent at an agreed rate for the time intervening between the agreement and the conveyance.  The complaint set out the agreement and claimed damages for its breach and a specific performance.  Held that judgment could be rendered in the suit for the amount of rent found due, as well as for a specific performance.

And it did not affect the case that the rent found due was in itself below the jurisdiction of the court.

[Argued April 18th—decided May 4th, 1893.]

SUIT for specific performance of an agreement to purchase land; brought to the Superior Court in New Haven County, and heard before *Thayer, J.* Facts found, and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*S. C. Morehouse,* for the appellant.

1. It is an elementary principle that a party, in order to avail himself of the liberal relief given by a court of equity, must show that he has no adequate remedy at law. That a vendee may come into a court of equity and enforce a contract of this nature has been settled by a long line of decisions, too numerous to mention here. The reason of these decisions is perfectly apparent. It is because mere damages cannot take the place of the land which the vendee desires, and which because of its location, or for other reasons, is peculiarly desirable to him. It is apparent, however, that the vendor who seeks the aid of a court of equity only to obtain money damages occupies a different situation. There is no special reason in his case, as in the case of a vendee of real estate, why he should obtain something which the court of law cannot give him, as a court of equity can, namely, the land. Consequently, while it seems to be settled by the case of *Hodges* v. *Kowing,* 58 Conn., 12, that a vendor might come into a court of equity and ask for a specific performance of a naked agreement to sell real estate, nevertheless it is plain that this is, as is there stated, only a general rule, and only gives the vendor a *primâ facie* right, subject to the manifest equities of the case. It is a right which is exceedingly narrow, and it manifestly should be only extended where justice and equity plainly will be done between the parties. It is plain that damages may not compensate and give full relief to the vendee of real estate, because the land may be peculiarly desirable to him. *Corbin* v. *Tracy,* 34 Conn., 325. There are many cases, it is true, where the specific performance of an agreement to sell land has been decreed by a court of equity at the instance of the vendor, but these are almost without exception, cases where damages

have been claimed for something more than mere breach of contract, and for which a court of law had no power to give damages. The cases of this kind in this state, prior to that of *Hodges* v. *Kowing*, were all cases where the vendee sought relief in equity and not the vendor. *Potter* v. *Tuttle*, 22 Conn., 512; *Quinn* v. *Roath*, 37 id., 16; *Pritchard* v. *Todd*, 38 id., 413; *Hart* v. *Elmer*, 39 id., 170. It is expressly held in Pennsylvania, whose statute is just like ours, that relief will not be granted to a vendor who seeks only damages or could be fully compensated by damages. *Kauffman's Appeal*, 55 Penn. St., 383; *Dech's Appeal*, 57 id., 468. It is manifest, if a vendor can come into a court of equity, seeking merely damages for breach of the contract for the sale of realty, that he has merely a *primâ facie* right to relief subject to the closest scrutiny, and that a court will seize upon the slightest circumstance to force him into a court of law.

. 2. Specific performance should never be decreed unless the agreement was a complete and final one between the parties. This is so undoubtedly settled that it needs no citation of cases to support it. Here the agreement was never signed by the defendant. Besides this, if it had been, there is no adequate description of the property. The case comes clearly within the statute of frauds.

3. There was no such part performance as would take the case out of the statute. The taking of the keys, or other acts of possession by the defendant, would not have any effect as part performance. A part performance by a defendant has no effect. Browne on Stat. of Frauds, § 453; *Caton* v. *Caton*, L. R., 1 Cha. App., 137; *Barnes* v. *Boston & Maine R. R. Co.*, 130 Mass., 388; *Luckett* v. *Williamson*, 37 Mo., 388. Nothing done by the plaintiff amounted to part performance. All that he did was merely incidental to the temporary occupation of the premises, and there was nothing done which constituted a part performance of the terms of the agreement. He still was in the actual occupation of the premises while the defendant was temporarily using them. The defendant had never taken possession to the exclusion

of the plaintiff. The plaintiff was still the owner of the premises.

4. There should have been no recovery of rent. There was no allegation of the complaint on which such a judgment could be founded.

*H. Stoddard* and *H. L. Hotchkiss*, for the appellee.

FENN, J. The plaintiff, being the owner, subject to various liens and incumbrances, of a tract of land, with buildings suitable for business purposes thereon, on August 22d, 1891, agreed with the defendant, by parol, to sell the same to him for three thousand dollars, and to give him a good and perfect title to the same, free from all incumbrances whatsoever, within a reasonable time; and the defendant agreed to purchase the property for said sum, to pay five hundred dollars down as soon as the deed was ready, and to mortgage the premises back to the plaintiff for twenty-five hundred dollars; making the note or notes so that three hundred dollars should be paid upon the principal annually, with semi-annual interest at the rate of six per cent per annum; also to insure the buildings for fifteen hundred dollars for the security of the plaintiff. It was further agreed that in case the plaintiff was delayed or prevented from executing a clear title to the premises, the rental should be figured at two hundred and fifty dollars per annum, payable monthly.

On August 24th, 1891, the defendant's agent called on the plaintiff, procured the keys of the buildings on the premises, and took possession of the same under said agreement; and on the same day the plaintiff, because of the agreement, detached and removed from the buildings in which they were situated, and from the premises, a boiler, shafting, vats, and other property, at a large expense, by reason of which removal the buildings became unfitted for the purposes for which the plaintiff had theretofore used the same.

On the 16th of November, 1891, the defendant sent the keys to the plaintiff's office, which the plaintiff refused to accept, and notified the plaintiff by letter that he intended

to vacate the premises. The plaintiff thereupon notified the defendant, in writing, that he should insist on the fulfillment of the agreement, and afterwards brought to the Superior Court his complaint, alleging in substance the foregoing facts, and also alleging that the plaintiff "in further pursuance of said agreement took steps to secure the release of the incumbrances on said land and buildings, and has arranged for the removal of a portion of the same, and is negotiating for a removal of the balance of the same, and in a short time will be able to convey the same to the defendant free of incumbrances, in accordance with said agreement." The complaint closed with a claim for damages, and, by way of equitable relief, that the defendant, upon tender of a warrantee deed of said land and buildings free of incumbrances, within such time as might be limited by the court, be required to execute to the plaintiff the mortgage note and deed and to make the payment stipulated in the agreement. The plaintiff afterwards in court filed an amendment to the complaint, alleging that since the commencement of the action he had completed the arrangements for the removal of the incumbrances on the land, and was then ready and willing, and offered, to cause said incumbrances to be removed, and to convey the premises to the defendant whenever the defendant would consent to accept a deed of the same, and to carry out his agreement in relation thereto as alleged in the complaint, or within such time as might be designated by the court for the carrying out of said contract.

The amendment to the complaint, which sets up the completion by the plaintiff of his arrangements for the removal of the incumbrances on the property, and his readiness to execute the conveyance, was treated by the parties in the Superior Court as, in effect, a supplemental complaint. As the matters thus pleaded were such as arose after the institution of the action, they should have been made the subject of supplemental pleadings, but, as no objection was made in the Superior Court to the allowance of the amendment, and none in this court to the consideration of the facts

which have been found under its allegations, we have paid no attention to this irregularity of procedure in coming to our decision upon the appeal, though it is clearly contrary to the general principles of pleading, as well as to the rules under the practice act, chap. III, sec. 8.

The court having, upon issues of fact closed to it, found such issues for the plaintiff, further found that there was due the plaintiff " for rent of said land and buildings, under the terms of said agreement, from August 24th, 1891, up to the date of this judgment, the sum of three hundred and thirty-three dollars and twenty-eight cents," and the court thereupon adjudged that, upon a tender to the defendant by the plaintiff, on or before March 1st, 1893, of a deed conveying to the defendant the described land and buildings, free from all incumbrances, the defendant should pay the plaintiff the sum of five hundred dollars, and execute to the plaintiff his note or notes for the sum of twenty-five hundred dollars, bearing the date of said judgment, payable to the plaintiff; by the terms of which note or notes the sum of three hundred dollars principal should be payable annually, with interest on all sums due on such note or notes, at the rate of six per cent per annum, payable semi-annually, securing such note or notes by a first mortgage, and keeping the buildings insured; and that the plaintiff recover said sum of $333.23 and his costs.

From this judgment the defendant appealed, assigning eight reasons, but presenting in reality four claims, as follows :—

*First.* That the plaintiff had adequate remedy at law; that the supposed agreement was one the violation of which could be compensated in damages, if any there were, and that specific performance should therefore not have been decreed.

*Second.* That the supposed agreement was within the statute of frauds; that there was no sufficient memorandum, in writing, signed by the defendant, or sufficient part performance to take it out of the statute of frauds.

*Third.* That more than a reasonable length of time had

elapsed since the date of the alleged agreement in which the plaintiff should have tendered a deed conveying a clear title to the defendant; and that as none was tendered previous to the commencement of the suit, no reason was shown for the intervention of a court of equity.

*Fourth.* That the judgment for rent was erroneous, because there were no proper allegations in the complaint adapted to such recovery; because such rent would be a sum below the jurisdiction of the court; and because the plaintiff had taken an unreasonable time to clear the title, and therefore the judgment rendered was inequitable.

We will consider each of these claims separately and in the above order. The first, however, to the effect that the vendor stands upon a different footing from the vendee in reference to the right to a specific performance, is fully disposed of by the decision of this court in *Hodges* v. *Kowing*, 58 Conn., 12, which, like the case now under consideration, was a suit by a vendor for the specific performance of a contract for the purchase of real estate. The relief was granted, the court saying that courts of equity " hold, as a general rule, that when a contract for the sale of real estate has been fairly entered into, the party contracting to sell, as well as the party contracting to buy, is entitled to have it specifically performed." To the same effect are the text books and authorities elsewhere, the reason given being that the " contract must be mutual in its obligation and in its remedy." Pomeroy's Eq., § 1405, and note. " In all such cases the court acts upon the ground that the remedy, if it exists at all, ought to be mutual and reciprocal, as well for the vendor as for the purchaser." Story's Eq. Jur., § 723. " As all remedies ought to be mutual, the vendor can invoke the same aid for the purpose of compelling the buyer to accept a conveyance and pay the purchase money." Bispham Eq., 4th ed., § 364.

It is true, in regard to the rule above stated, that courts of equity have sometimes refused to apply it in certain cases where it would be specially productive of hardship or inconvenience. This was so in *Whitney* v. *City of New Haven,*

23 Conn., 624, cited and quoted in *Hodges* v. *Kowing, supra.* But there is nothing apparent in the record before us to warrant an exception on such ground from the rule. Indeed, the defendant's contention, as found in his brief, is rather that the vendor's right to a specific performance should be held exceptional, and confined to cases where it appeared that in the particular instance the remedy by damages in a court of law would not be adequate—" cases where damages have been claimed for something more than a breach of contract, and for which a court of law had no power to give damages." But this contention is alike opposed to the weight of authority, the generality of the rule stated, and to the ground of mutuality upon which it depends. Hence we cannot give to it our sanction.

In the next place, the original agreement being within the statute of frauds, it is contended by the defendant that there was neither a sufficient memorandum in writing, nor part performance, to relieve the case from the operation of the statute. The plaintiff claims that there was both a sufficient memorandum and part performance. So far as relates to the first point, the record states that the plaintiff, on the day when the oral agreement was made, wrote out a memorandum of it, and submitted the same to the defendant; that it was then agreed that the plaintiff should have duplicate copies of the agreement prepared, which he should sign and forward to the defendant for his signature, the defendant agreeing to return one of the duplicates to the plaintiff; that two days later the plaintiff did cause duplicates of the agreement to be prepared, which he signed and forwarded to the defendant on the same day, accompanied by a letter, which duplicates the defendant received at Providence, R. I., in due course of mail, examined, and on the margin of one of them wrote the words, " No description property," and acknowledged receipt in a letter signed by him in these words —"Your favor of 24th inst. came to hand and duly noted. Writer will be in your city to-morrow and will call on you with agreement." Neither of the duplicate agreements was in fact ever signed by the defendant. The only description

of the property contained in such duplicates was the following:—"A tract of land, with all the buildings thereon, adjoining the New Haven & Derby R. R. in the town of Orange, containing some twenty acres more or less." It appears also that the defendant, after taking possession, caused a search of the title of the property to be made, and obtained from the person employed by him to make such search, a certificate, signed by that person, which embraced a complete description of the property. It will be seen that the description contained in the duplicate agreements, if it can be called a description at all, is most indefinite; much more so than the general one which in *Hodges* v. *Kowing* was held sufficient. Indeed, the court said that if the only description of the land there had been "fifteen acres, more or less, in the town of Stratford," there would have been force in the claim that the statement of the location of the land would have been too indefinite to satisfy the requirements of the statute of frauds, though it was added that, "according to the decision of courts of high authority, such a description might have been applied to the land intended by it by extrinsic evidence." And the cases of *Hurley* v. *Brown*, 98 Mass., 545, *Mead* v. *Parker*, 115 Mass., 413, and *Robeson* v. *Hornbaker*, 3 N. Jer. Eq., 60, were cited.

But waiving the decision of this question, as well as the effect of the procurement of the certificate of title by the defendant upon it, (see *Jenkins* v. *Harrison*, 66 Ala., 345,) we are of opinion that there was no sufficient signature, by the party sought to be bound, that is, the defendant. The plaintiff claims that the certificate of title should be considered in this connection also, but we think this claim too manifestly without foundation to require discussion, except perhaps to say that it is not claimed that any reference to this certificate was ever made by the defendant in writing, or that it was ever procured for any other purpose than the personal satisfaction of the defendant, or that the searcher, in making and signing the same, acted as the agent of the defendant in any matter connected either with the making or acknowledgment of the contract; and to quote with

Andrews v. Babcock.

approval the language of Baron PARKE, in *Johnson* v. *Dodgson*, 2 Mees. & Wels., 653, where, in answer to a question put by counsel in their argument, whether a memorandum entered by the defendant in his own book that the plaintiffs had sold to him would be sufficient, he said—"If he meant it to be a memorandum of the contract between the parties, it would; not so if he meant it to be a mere memorandum to be kept by himself for himself." The only signature by the defendant is to the letter, which we have quoted; and while it is undoubtedly true that such letter would be sufficient, if capable of such construction as to make it a definite reference and *assent* to a sufficiently definite previous written memorandum of the agreement, yet we are unable to so construe it. The letter of the plaintiff which it purports to acknowledge inclosed the duplicates, and said—"*If found correct* please sign and mail us one of them at your earliest convenience." The answer merely said—"Will call on you with agreement." The inference from such language, coupled with the fact that the course proposed was different from that requested by the plaintiff, is certainly as natural that the "agreements" were not "found correct," as the opposite. Perhaps the memorandum, "no description property," made by the defendant on the margin of one of the duplicates, may be taken as the true explanation. At any rate we regard the language as too indefinite, uncertain and ambiguous, and that therefore it does not come up to the standard of the rule in *Oliver* v. *Hunting*, L. R., 44 Cha. Div., 205; *Studds* v. *Watson*, L. R., 28 Cha. Div., 305; *Shardlow* v. *Cotterall*, L. R., 20 Cha. Div., 90, 93, and *Ryan* v. *United States*, 136 U. S. R., 68, cases cited by the plaintiff; or of "Set your strawberries; let me have mowing machine and horse-rake," in *Linsley* v. *Tibbals*, 40 Conn., 522.

We come then to the question of part performance. The general rule in reference to this subject is thus stated in Pomeroy's Eq., § 1405: "The doctrine was settled at an early day in England, and has been fully adopted in nearly all of the American states, that a verbal contract for the sale or leasing of land, if part performed by the party seek-

ing the remedy, may be specifically enforced by courts of equity, notwithstanding the statute of frauds." Among the numerous authorities referred to by the learned author in support of the proposition of the text is that of *Eaton* v. *Whitaker*, 18 Conn., 222, which is regarded as a leading case, and given and annotated as such in 44 Am. Decisions, 586. The principle is undoubted ; the only question relates to the acts which constitute sufficient part performance. Generally they must be such as are done by the party seeking to enforce the contract, in pursuance of the contract, and with the design of carrying the same into execution, and must also be done with the assent, express or implied, or knowledge of the other party, and be such acts as alter the relations of the parties. Acts, therefore, done prior to the contract, acts merely preparatory or ancillary to the agreement, such as delivering an abstract of title, measuring the land, drawing up deeds and the like, have been held insufficient. Whether delivering or taking possession of the land is alone sufficient has been variously decided. This court held in *Eaton* v. *Whitaker*, *supra*, that it was, saying, (p. 229): " The elementary books all lay down the proposition that delivery of possession is part performance ; Powell on Cont., 294 ; Newland on Cont., 183 ; 2 Swift's Dig., 30 ; 2 Story Eq. Jur., § 763 ; and we know of no decision to the contrary." The court also quotes 4 Kent's Com., 451, and *Earl of Aylesford's Case*, 2 Stra., 783, saying of the latter case— " That case seems to be exactly like this in all respects except that the bill was brought by the lessor, and in this case it is brought by the lessee. But this is an answer to the suggestion of counsel that there was no mutuality in compelling the defendant to execute this agreement. Undoubtedly the obligation to perform should be mutual, but the case referred to shows that it is so."

Some of the most recent cases, however, undoubtedly hold that possession alone is not sufficient. But on examination we think most of the cases capable of being reconciled and made consistent on this principle, that while possession alone of land, under a verbal contract, when delivered to a

Andrews v. Babcock.

vendee or lessee with the consent of the vendor or lessor, or with such knowledge as would imply consent, and under such circumstances that it can naturally and reasonably be accounted for only by the supposition of some contract, instead of any other relation between the parties, thus clearly indicating the commencement of a new estate or interest in the land on the part of the possessor, is a sufficient act of part performance to take the case out of the statute, yet the mere physical fact of possession is not sufficient, " when the possession is not a new fact, but is the continuation of a former similar condition, as when it is by a tenant after the expiration of his term alleging a verbal contract to renew or to convey, the intent " (to carry out and execute the agreement) " must be proved by some further act which clearly shows 'that possession must be accounted for by the new relation, and cannot be referred to the previous holding." Pomeroy on Spec. Perf., § 116. So also, in every case where possession can be naturally and reasonably accounted for otherwise than by a contract between. the parties, it will not be sufficient. Thus, to mention a few only of the most recent cases, in *Recknagle* v. *Schmaltz*, 72 Iowa, 63, it was held that possession alone was not sufficient, because " the plaintiff was occupying the land as a tenant or employee of the intestate at the time of the alleged contract. He cannot therefore rely upon his possession to take the contract out of the operation of the statute of frauds." In *Swales* v. *Jackson*, 126 Ind., 282, it was held that " where the vendees were already occupying the land as tenants or as former owners, and continued in possession after the parol contract was made, there is no such taking of possession as will bring the case within the exception of the statute of frauds. To bring a parol contract for the sale of real estate within the exception to the statute, there must be an open and visible change of possession under the contract." The case of *Wendell* v. *Stone*, 39 Hun, 382, is similar to *Eaton* v. *Whitaker*, *supra*, and fully confirmatory of it. To the same effect are *Holmes* v. *Woden*, 57 Verm., 111, and *Morrison* v. *Herrick*, 130 Ill., 631. See also, 3 Pomeroy's Eq., § 1409, and note,

and Beach's Eq., § 613, in which latter work it is said that " in general possession given and taken, if not wrongfully, will amount to part performance," citing many authorities.

There are cases which lay down the rule that the acts of part performance must go farther than merely to evidence the existence of a contract, by showing that they were done in pursuance of the very contract alleged. The true rule is, however, as we think, very clearly stated by Pomeroy (Spec. Perf., § 107,) in these words:—" The acts of part performance must be such as show that some contract exists between the parties, that they were done in pursuance thereof, and that it is not inconsistent with the one alleged in the pleadings. Whenever acts of part performance are made out which thus point to a contract, the door is opened, and the plaintiff may introduce additional parol evidence directed immediately to the terms of the contract relied upon ; " a proposition which the author supports by abundant citation of authorities.

It was suggested, in argument, that all the acts of alleged part performance in the case before us were by the defendant, in taking possession, and that the rule is that they must be the acts of the plaintiff. But not alone did this court in *Eaton* v. *Whitaker, supra,* regard the delivery of possession as an act equal to that of taking possession, but such is the unquestioned rule everywhere. The treatises and cases all speak of such acts as of equivalent force ; and we quote again the clear and expressive language of Pomeroy (Spec. Perf., § 118)—" As the questions concerning specific performance may generally arise in two classes of suits, those prosecuted by vendees and those prosecuted by vendors, so the subject of possession as a part performance may be presented under these two aspects : first, when the vendee or lessee sues to enforce the verbal contract, and relies upon a possession taken by himself with the consent of the vendor ; second, when the vendor sues and relies upon a possession delivered by himself and accepted by the vendee. Although the former case is by far the most frequent in practice, the rule as to part performance applies with the same force and

Andrews *v.* Babcock.

effect to the latter." In this case, in addition to the fact of possession delivered and taken, it is alleged in the complaint that "in pursuance of said agreement the plaintiff, at a great expense, removed machinery, implements, tools and fixtures, and personal property, from said land and buildings," and that he "took steps to procure the release of the incumbrances;" statements which, as appears elsewhere in this opinion, the trial court found proved and true. We therefore entertain no doubt that sufficient part performance by the plaintiff was shown to relieve the case from the operation of the statute of frauds.

The third reason of appeal, as we have re-stated such reasons, namely, that more than a reasonable time had elapsed, and that no deed conveying a clear title had been made out and tendered to the defendant, was not pressed by the defendant, either in his brief or in the oral argument. The finding of the court was that during the negotiations the plaintiff fully explained to the defendant the existence of the liens and incumbrances, and that the time within which he would be able to cause them to be removed was uncertain; that he proceeded, as contemplated by the parties, to adjust the incumbrances, and prior to the trial of the cause had completed arrangements for their removal; that in so doing he used reasonable diligence, and that time was not of the essence of the contract. The established principle is that where a contract is entered into in good faith, and time is not of its essence, and is not made material by the offer to fulfill by the other party and a request for a conveyance, the vendor will be allowed reasonable time and opportunity to perfect his title, however defective it may have been at the time of the agreement. All that is necessary is that the plaintiff is able to make the stipulated title at the time when, by the terms of the agreement, or by the equities of the particular case, he is required to make the conveyance to entitle himself to the consideration. *Dresel* v. *Jordan*, 104 Mass., 407; *Logan* v. *Bull*, 78 Ky., 607; *Dodson* v. *Hays*, 29 W. Va., 577; *Hodson* v. *Buchanan*, 96 N. Car., 444; *Oakey* v. *Cook*, 41 N. Jer. Eq., 350, 364. In view of the finding made,

and of the principle stated, this reason of appeal by a defendant who early undertook to repudiate his agreement may well be dismissed.

The remaining reason relates to the judgment rendered by the court for rent, so called. It is said that there is no allegation in the complaint adapted to such recovery. The complaint however states the contract and concludes with a claim (among others) for damages. It seems to us that this is clearly a sufficient allegation; and that, by the general rules of equity, as well as by the express provisions and also by the spirit of the practice act, the court, having once obtained jurisdiction, should retain it for the purpose of administering full relief concerning the subject matter. The claim that the sum was below the jurisdiction of the court is met and answered by the fact that the damages allowed did not constitute the cause of action. The demand was for four thousand dollars damages and also for equitable relief. Such equitable relief constituted the major feature of the judgment rendered, the damages awarded being minor and incidental, though essential to a full judicial determination and adjustment of the matter in dispute between the parties. Finally, it is a sufficient answer to the claim that the judgment rendered was inequitable, to say that it literally accords with the contract of the parties, and since the record shows that the plaintiff had at all times, in good faith and with reasonable diligence, proceeded in the performance of such acts as it was incumbent on him to do, any different judgment would seemingly impair the obligation of the contract, substituting therefor another, created by the court, and for no better apparent reason than that the defendant, who did not intend to be bound by any contract, would prefer, if compelled to be so at all, that it should be to such a one as he now suggests, rather than to such as he made.

There is no error in the judgment complained of.

In this opinion the other judges concurred.