PATERAKIS et al., Appellants,

v.

ESTATE of TUMA et al., Appellees.

[Cite as *Paterakis v. Estate of Tuma* (1990), 66 Ohio App.3d 373.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 56555.

Decided March 14, 1990.

*Starkoff & Bogart* and *Michael Gallagher,* for appellants.

*John E. Shepherd,* for appellee Estate of Viola R. Tuma.

*David K. Speaker,* for appellee George Farourakis.

*Wayne H. Calabrese* and *Timothy J. Truby,* for appellees Sunny Mae Quatchon and F.J. Fela & Assoc.

JOHN F. CORRIGAN, Judge.

Plaintiffs, Steven G. Paterakis and Three G's Corporation, d.b.a. Steven's Family Restaurant, appeal from the judgment of the trial court entered in favor of defendants, the Estate of Viola Tuma, Sunny Mae Quatchon, F.J. Fela and Assoc., and George Farourakis, in plaintiffs' action for specific performance of a lease and other causes of action. For the reasons set forth below, the judgment of the trial court is affirmed.

I

This dispute arises from plaintiffs' lease of property located at 11600 Detroit Avenue, in Cleveland, from Viola R. Tuma. The parties' lease, executed in 1982, allowed plaintiffs to occupy the subject premises for five years and further granted plaintiffs options to renew for two additional five-year terms, upon sixty days' notice to the lessor. Tuma died in 1983, leaving Quatchon as a beneficiary. The estate was not closed as of the time of trial, however. This action was filed following a dispute regarding whether plaintiffs could remain on the subject premises under the first option.

In their first cause of action, plaintiffs alleged that defendants Quatchon and Fela represented that the subject premises were to be demolished in late 1987 and further represented that plaintiffs could relocate to an adjacent building owned by Quatchon and the estate. Plaintiffs further alleged that in reliance upon these representations, they did not exercise their first option. In addition, no agreement regarding plaintiffs' lease of the adjacent building was reached.

In their second cause of action, plaintiffs alleged that defendants acted fraudulently with respect to the foregoing conduct. In their third cause of action, plaintiffs alleged that defendants willfully allowed the subject premises to fall into a state of disrepair. Plaintiffs then prayed for specific performance of the lease option, or, in the alternative, specific performance of a lease for the adjacent premises, and compensatory and punitive damages.

Each of the defendants filed answers denying plaintiffs' allegations. Defendants Quatchon and F.J. Fela & Assoc., and defendant Farourakis also filed counterclaims for malicious prosecution, seeking nonliquidated damages.

The matter proceeded to a bench trial on September 22, 1988. Plaintiffs began their case by amending their complaint to indicate that they did in fact duly exercise the first lease option for the subject premises. Plaintiffs then called Quatchon to testify upon cross-examination. Quatchon stated that in early 1987, she had a verbal understanding with plaintiffs that their restaurant would be moved to the adjacent building. Paterakis introduced her to

Farourakis some time in 1987, however, and told her that they were entering into a deal to jointly occupy the new building. Thereafter, Paterakis and Farourakis failed to reach a partnership agreement, and Quatchon refused to enter into a lease with them. Finally, Quatchon testified that she wanted plaintiffs to vacate the subject premises in December 1987 after learning that they had not submitted notice of intent to exercise the first option.

Paterakis likewise admitted that he attempted to enter into a partnership agreement with Farourakis, and negotiated with F.J. Fela & Assoc., property manager of the premises, in order to obtain a lease for the premises adjacent to the subject premises. Paterakis claimed that he orally informed Fela, in the presence of Sue Warner, that he intended to exercise his option for the subject premises should these negotiations fail to produce an agreement for the adjacent premises. According to Paterakis, Fela said that the option could not be exercised because the subject premises was being torn down. Paterakis further claimed that he also gave written notice of intent to exercise the option.

Sue Warner, testifying for plaintiffs, indicated that when Paterakis told Fela that he wanted to exercise the lease option, Fela said that the lease would be renewed, however. In addition, as to plaintiffs' claims regarding written notice of intent to exercise their option, Paterakis could not recall who prepared this document.

Defendants' evidence established that because Tuma's estate was not yet closed, notice to exercise the option was to be given to the ancillary administrator of the estate. Further, defendants consistently denied that plaintiffs exercised their option for the subject premises either orally or in writing. As to plaintiffs' occupation of the adjacent premises, defendants' evidence established that it was Paterakis who first indicated that he would be entering into a partnership agreement with Farourakis, and when the two were unable to reach such an agreement, Fela and Quatchon refused to lease this property to them.

The trial court subsequently concluded that Paterakis' claims that plaintiffs had exercised their option to renew their lease for the subject premises were not credible, and further concluded that there was no duly executed lease under which plaintiffs could occupy the adjacent premises. The court therefore entered judgment for defendants on all claims. Plaintiffs now appeal, assigning a single error.[1]

---

1. While the trial court failed to journalize disposition of Quatchon's, Fela's, and Farourakis' counterclaims for nonliquidated damages, malicious prosection cannot be asserted in a

II

■ For their sole assignment of error, plaintiffs contend that the trial court erred in refusing to grant them specific performance of their option to renew, because, they claim, they are entitled to equitable relief despite their failure to give notice of intent to exercise this option, pursuant to *Ward v. Washington Distributors* (1980), 67 Ohio App.2d 49, 21 O.O.3d 362, 425 N.E.2d 420, and because they held over in their tenancy.

In *Ward v. Washington Distributors, supra,* the Lucas County Court of Appeals held that equity may relieve a tenant from forfeiture of an option to renew, where the tenant exercises the option after the renewal date. The court stated:

"The well-settled rule is that unless the delay in renewing is so great as to be inexcusable, a failure to renew within the specified time will not preclude equitable relief. See *Jones v. Gianferante* (1953), 305 N.Y. 135, 111 N.E.2d 419; *Xanthakey v. Hayes* (1928), 107 Conn. 459, 140 A. 808.

"* * *

"Equity will relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor; * * *.

"* * *

"Equity will not tolerate a forfeiture where the lessees' delay was attributable to an erroneous recollection of the number of days in advance that the notice to renew was required to be presented, or to an honest mistake, where there was no willful or deliberate act or omission of the lessees, the lessees having lost their copy of the lease. See *Galvin v. Simons* (1942), 128 Conn. 616, 25 A.2d 64. See, also, *Geo. W. Millar & Co., Inc., v. Wolf Sales & Service Corp.* (1971), 65 N.Y.Misc.2d 585, 318 N.Y.Supp.2d 24; *Sy Jack Realty Co. v. Pergament Syosset Corp.* (1971), 27 N.Y.2d 449, 318 N.Y.Supp.2d 720 [267 N.E.2d 462]. The facts in these cited cases are analogous to the facts in the case at bar.

"Even when there is an absence of an honest mistake by the lessee, where the lessee has made valuable improvements to the leased premises, the lessee should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of such improvements would result—provided, there is no prejudice to the landlord. See *Barr Hotel Co. v. Lloyd MacKeown Buick Co.* [104 Ohio

---

counterclaim. See *Sorin v. Warrensville Hts. Bd. of Edn.* (N.D.Ohio 1978), 464 F.Supp. 50, 52. Accordingly, there is a final appealable order in this action.

App. 69, 4 O.O.2d 157, 146 N.E.2d 879], *supra; J.N.A. Realty Corp. v. Cross Bay Chelsea, Inc.* (1977), 42 N.Y.2d 392, 397–398, 397 N.Y.Supp.2d 958, 961 [366 N.E.2d 1313, 1316]; *Xanthakey v. Hayes, supra; F.B. Fountain Co. v. Stein* (Conn.1922), [97 Conn. 619], 118 A. 47; *Geo. W. Millar & Co., Inc. v. Wolf Sales & Service Corp., supra." Id.,* 67 Ohio App.2d at 53–54, 21 O.O.3d at 364–365, 425 N.E.2d at 423–424.

Applying the foregoing to this case, we cannot conclude that plaintiffs are entitled to equitable relief. First, while the tenants in *Ward v. Washington Distributors, supra,* exercised their option thirty days late, the trial court determined that plaintiffs in the instant case at no time exercised their option, as it concluded that plaintiffs' claims that Paterakis both orally informed Fela of his intent to renew, and also sent Quatchon a letter to this effect were not credible. Moreover, there was absolutely no indication that notice was given to the estate, as required under the lease. Secondly, the facts did not demonstrate that this failure was the result of accident, fraud, surprise, or honest mistake. Instead, it was the result of Paterakis' deliberate attempts to establish a new restaurant partnership in the adjacent building, and the subsequent failure of those attempts. Thirdly, there is evidence that the landlord in the instant case will suffer prejudice if equitable relief is granted, as many of the tenants of the subject premises have been evicted to facilitate the rehabilitation project planned for the area.

Accordingly, we hold that the facts of this case do not justify equitable relief.

■ Plaintiffs further argue that they are entitled to specific performance of the lease option for the subject premises because they held over in their tenancy. Holding over is insufficient to exercise a renewal option, however. *Ahmed v. Scott* (1979), 65 Ohio App.2d 271, 276, 19 O.O.3d 273, 277, 418 N.E.2d 406, 410. See, also, *Mansfield Motors, Inc. v. Freer* (1932), 42 Ohio App. 214, 217–218, 182 N.E. 51, 52–53.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

Patton, C.J., and Nahra, J., concur.